**LUTHERAN HOSPITALS AND HOMES SOCIETY OF AMERICA, Appellant (Defendant below),**

v.

**Elisabeth YEPSEN, formerly Elisabeth Gall, Appellee (Plaintiff below).**

No. 3797.

Supreme Court of Wyoming.

May 22, 1970.

Houston G. Williams, of Wehrli & Williams, Casper, for appellant.

Ernest Wilkerson and John Burk, Casper, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is a case involving a claim for damages wherein plaintiff alleges the negligence of defendant, Lutheran Hospitals and Homes Society of America, resulted in the death of her husband. The principal issue

at this stage is whether the hospital is immune from suit.

Action was instituted by Elisabeth Yepsen, formerly Elisabeth Gall, as administratrix of the estate of Edwin A. Gall, deceased. Plaintiff's complaint alleges Gall had sustained a puncture wound on his left thigh; that he became a patient at Memorial Hospital of Washakie County which was operated by defendant; that Gall died from gas gangrene secondary to the puncture wound; and that the death was a result of negligence on the part of defendant or its employees.

Pursuant to Rule 42(b), W.R.C.P., the hospital asked for and was granted a separate trial of the issue of whether Lutheran Hospital and Homes Society of America was immune from suit—either as a charitable organization or on account of governmental immunity, it being the operator of a county hospital.

The trial judge found, among other things, that the test of a charitable institution in this state is whether the institution is operated in any form for profit, gain or advantage; and that defendant-society rendered such a minute amount of service on a "free" or "charity" basis, in comparison with those cases where charges are made and payment is expected, that the charity nature of the institution was insufficient to give defendant the immunity it seeks. The trial judge also held defendant was not cloaked with governmental immunity.

Pursuant to Rule 54(b), W.R.C.P., the district court made an express determination that there is no just reason for delay in the entry of a judgment and decree upon the matter tried. It therefore expressly directed the entry of judgment on the "issues" of defendant's immunity as a charitable institution and of its immunity as a governmental agency. Judgment was entered accordingly, and defendant-society has appealed from such judgment.

■ We previously ruled, in connection with a motion to dismiss, that we would ac-cept appellant's appeal. Such ruling was probably ill-advised, and it must not be considered a precedent for future cases.

The appeal should not have been accepted at this point because we hold generally to the proposition that piecemeal appeals are undesirable. Reeves v. Harris, Wyo., 380 P.2d 769, 770; and Logan v. Stannard, Wyo., 439 P.2d 24, 25. Moreover, Rule 54(b) applies where there is more than one "claim" or when multiple parties are involved. Here there are separate "issues" but only one claim—a claim for damages resulting from the death of plaintiff's testator. At the time of trial on the issue of immunity, there was only one plaintiff and one defendant.

We doubt that Rule 54(b) should have been applied at all. Nevertheless, in view of our previous acceptance of the appeal and because some observations on the matter of immunity can be beneficial to the trial court in connection with further proceedings, we will express our views on the question presently presented.

■ We have had occasion several times lately to say we are aware of the inequities which often arise by reason of the rule of *governmental immunity*; that such inequities tend to be more numerous with increasing governmental activities; but that any change in the rule must be effected by the legislature rather than the courts. Bondurant v. Board of Trustees of Memorial Hospital, Wyo., 354 P.2d 219, 222; and Denver Buick, Inc. v. Pearson, Wyo., 465 P.2d 512, 513–514.

*Charitable Immunity*

■ The rule under which charitable institutions have been held to be immune from suit is a creation of the courts. It does not arise out of a constitutional grant or enactment of the legislature.

If courts, including ours, have recognized that inequities arise by reason of the rule of *governmental immunity* and that such rule ought to be changed—by the legislature, it follows *a fortiori* that the rule of

charitable immunity might well be restricted by courts, since it is a creation of the courts.

We think it unnecessary in the instant case to restrict the rule of charitable immunity beyond standards and principles which have been recognized and followed by the legislature in different but somewhat similar areas.

Appellant relies primarily on the precedent established for our state in the 1916 case of Bishop Randall Hospital v. Hartley, 24 Wyo. 408, 160 P. 385. There, the rule of charitable immunity was recognized and followed; and Lutheran argues there is no material difference in the facts of this case and the facts which were present in the *Bishop Randall* case. In general, both hospitals received patients, made charges for services of the hospital and expected payment to be made unless the patient was unable to pay. In some instances, when it was apparent payment could not be made, the account would be considered as having been incurred on the basis of a "charity" and without payment.

The district court has so far held, based on the evidence before it, that defendant-Lutheran is not a charitable institution to such an extent that it is entitled to claim charitable immunity. Unless something different is shown before the case is finally disposed of in district court, we would be inclined to approve this holding.

Since 1916, when the *Bishop Randall* case was decided, the Wyoming Legislature has done several things which indicate it, like the courts, realizes rules of immunity must be limited and restricted. The acts we refer to are not directly applicable to the case being dealt with, but the standards and principles involved can, we think, be used as a guide for us to go by.

In 1961 the legislature adopted what is now § 33.343.1, W.S.1957, 1967 Cum.Supp. It states:

"Any person licensed as a physician and surgeon under the laws of the State of Wyoming, or any other person, who in good faith renders emergency care or assistance without compensation at the place of an emergency or accident, shall not be liable for any civil damages for acts or omissions in good faith."

It will be noted the legislature has here recognized the right of a doctor or other person to have immunity when he renders emergency care or assistance in good faith, only if it is rendered "without compensation."

Prior to 1955 the legislature had exempted from taxation property used for lodge rooms for meetings of secret, benevolent and charitable societies, when such property was not used for private profit. See § 32–104, W.C.S.1945. In 1955 this exemption statute was amended to take the exemption away from these societies when the property is used primarily for commercial purposes. See § 39–10, W.S.1957. In the 1955 amendment, the legislature defined the term "commercial purposes," as used in the amendment, to include certain operations "if a charge is made" for services or merchandise.

We have no desire to get into the matter of tax exemptions, except to say in 1955 the legislature saw fit to take away from "charitable" societies an immunity from taxation when a "charge" is made for services and merchandise. Thus, recognition was given to the principle that the matter of charging for services and merchandise could make something commercial which would otherwise be charitable.

In recent years the legislature has from time to time authorized a governmental agency to carry liability insurance and has waived the defense of governmental immunity for such agency, to the extent of the liability insurance carried. See ch. 111, § 42, S.L. of Wyoming 1969, which replaces § 21–154, W.S.1957; and see also § 15.1–4, W.S.1957, C. 1965.

We are aware of the fact that both governmental agencies and institutions such as the Lutheran society can and do carry liability insurance to a far greater extent than

was done in 1916. Thus, there is less reason for a rule of immunity—whether it be governmental or charitable—than there was in 1916.

The supreme court of North Carolina, in Rabon v. Rowan Memorial Hospital Incorporated, 269 N.C. 1, 152 S.E.2d 485, 498–499, pointed out that the hospital which had been sued in that case could be held liable for the negligence of its employees without discarding the doctrine of charitable immunity as applied to churches, orphanages, rescue missions, transcient homes for the indigent, and other similar institutions which remain charitable institutions in fact.

In *Rabon*, the court held the hospital there involved not a charitable institution because every effort was made to operate at a profit, with the profit being put back into the facility; and because paying patients contributed largely to the hospital's support and maintenance and provided the major share of the operating funds. There was the added consideration that large payments are made in behalf of charity patients by governmental agencies from public funds. In other words, generally speaking, some person or agency pays for the services a hospital renders.

Ample evidence was presented on behalf of Gall's administratrix to justify the trial court in finding Lutheran hospital not substantially different from the Rowan hospital which was involved in *Rabon*. The fact that substantial payments are made in behalf of charity patients, by governmental agencies from public funds, can be said to render the situation of the Lutheran hospital in this case materially different from the hospital involved in the 1916 case of *Bishop Randall*.

■ The fact that charges are generally made and were in fact made in connection with Gall's treatment needs to be viewed in the light of legislative tendencies, since 1916, to limit benefits bestowed upon charities to instances where charges are not made and where compensation is not received. Also, the district court's finding that defendant is not a charitable institution to such an extent that it is entitled to claim charitable immunity needs to be considered in the light of the trend, since 1916, for governmental agencies to make payments from public funds for the treatment of charity patients.

When this case is viewed in the light of these two important considerations, which have developed since 1916, we must conclude the *Bishop Randall* decision is no longer controlling. The district court was justified in holding that defendant cannot claim charitable immunity.

### Governmental Immunity

■ Pursuant to § 18–323, W.S.1957, the Board of Trustees of Washakie County Memorial Hospital entered into a lease with Lutheran Hospitals and Homes Society of America whereby the county board leased the hospital building and equipment of the county to Lutheran. In return, Lutheran agreed to operate the hospital and provide treatment for properly certified indigent persons. Because of this arrangement appellant claims it is entitled to governmental immunity. For such claim it relies primarily on Bondurant v. Board of Trustees of Memorial Hospital, Wyo., 354 P.2d 219.

*Bondurant* stands for the proposition that a governmental agency has immunity but not for the proposition that a lessee of a governmental agency is a governmental agency. No other pertinent authority or persuasive reason is given for appellant's claim of governmental immunity, and we agree with the district court that such claim should be rejected.

Whether plaintiff can ultimately recover remains to be seen. At the stage reached, however, defendant has no grounds for reversal.

Remanded for further proceedings consistent with this opinion.

PARKER, Justice (dissenting).

Except in the instances for which provision is specifically made in Rule 54(b),

W.R.C.P., piecemeal review is not favored.[1] The instant case involves neither multiple claims nor multiple parties; Rule 54(b) has no application; and the cause is, therefore, not properly before us for decision on the merits. It might be noted that Federal courts are authorized by 28 U.S.C. § 1292(b) to permit appeals of interlocutory orders under certain circumstances where only a single claim is involved, but Wyoming has no counterpart of that statute.

Additionally, the doctrine of stare decisis is a salutary one and a departure from it is not warranted here. There are, of course, compelling arguments to the effect that charitable organizations should not under present-day conditions be immune from liability for injuries sustained by a patient as a result of employees' negligence, but there are likewise valid reasons supporting an opposite conclusion. While the issue here differs in certain respects from that of governmental immunity upon which this court spoke clearly in Bondurant v. Board of Trustees of the Memorial Hospital of Converse County, Wyo., 354 P.2d 219, 222, the bases for decision are similar. The questions of public policy attendant to a reversal of long-settled state precedent recognizing charitable immunity are properly ones for the consideration of the elected representatives of the citizens—the legislature.

1. Reeves v. Harris, Wyo., 380 P.2d 769, 770.